IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ORIENTAL BANK,

      **Appellant,**

          **v.**

BUILDERS HOLDING CO. CORP., *et al.,*

      **Appellees.**

**Civil No.** 20-1645 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

Debtor Builders Holding Company ("Builders") commenced an adversary proceeding against appellant Oriental Bank, seeking to rescind an erroneous payment of $537,924.13. Adv. Pro. 17-012. The United States Bankruptcy Court for the District of Puerto Rico ("bankruptcy court") ruled in favor of appellees Builders, the Puerto Rico Financing Authority ("Financing Authority"), and Mapfre Praico Insurance Company and Endurance Assurance Corporation ("MAPFRE") (collectively, "appellees"). See In re Builders Holding Co., 617 B.R. 414 (Bankr. D.P.R. 2020) (Godoy, Bankr. J.)).[1] Oriental Bank requests that the Court reverse this decision. (Case No. 20-1645, Docket No. 7.) For the reasons set forth below, the disposition of the bankruptcy court is **AFFIRMED.**

---

[1] The bankruptcy court appointed a Chapter 7 trustee after the commencement of the adversary proceeding. Id. at 416. Although the Chapter 7 trustee is named as a defendant in the action, the Court will refer the debtor solely as "Builders" to avoid confusion.

Civil No. 20-1645 (FAB)                                                    2

## I. Background

This litigation arises from a $537,924.18 payment.  The facts are uncontested.  In re Builders Holding Co., 617 B.R. 414, 418 (Bankr. D.P.R. 2020) (Godoy, Bankr. J.).

### A. The 2010 Agreement of Indemnity

Builders is a general contractor with offices in Puerto Rico and Texas.  (Bank. Pet. 16-6643, Docket No. 1 at p. 86.)[2]  On August 5, 2010, MAPFRE and Builders entered into an Agreement of Indemnity.  In re Builders Holding Co., 617 B.R. at 418.  The parties registered this agreement with the Puerto Rico Department of State on August 30, 2010.  In re Builders Holding Co., 617 B.R. at 419.

Pursuant to the Agreement of Indemnity, MAPFRE issued surety bonds to guarantee the payment of labor and materials. (Adv. Pro. 17-012, Docket No. 92 at p. 3.)  In turn, Builders agreed to hold MAPFRE harmless and indemnify it "from any and all other such losses and expenses" associated with the suretyship.  Id.  The agreement is secured by "all moneys" received by Builders from third-party entities.  Id. at pp. 4-5.  These payments constitute a "trust" to compensate MAPFRE "for any liability or loss it may have or sustain under any BOND."  Id.

---

[2] Formerly known as C.D. Builders, Inc. (Adv. Pro. 17-012, Docket No. 74 at p. 1.)

Civil No. 20-1645 (FAB)                                                3

**B. The 2014 Line of Credit**

Builders "receive[d] payments and deposits related to its regular business operation" at Oriental Bank. Id. at 419.   On December 26, 2014, it obtained two lines of credit for $675,000 and $500,000, respectively.   (Adv. Pro. 17-012, Docket No. 111, Ex. 1 at p. 3.)   Builders represented to Oriental Bank that it held:

> full title of ownership over all of their assets which insure the obligations of [Builders] under the Extensions of Credit.  The assets of the Parties are not affected by any mortgage, pledge, surrender or lien, excepting those allowed by the provisions of this Contract and/or all other Loan Documents.

Id. at p. 11.   The collateral for the lines of credit include, inter alia, "all of [Builder's] accounts receivables and all type[s] of profit." (Adv. Pro. 17-012, Docket No. 11, Ex. 6 at p. 2.)

The line of credit contract makes no reference to the 2010 Agreement of Indemnity.   Indeed, Builders disavowed the:

> existence of any mortgage, pledge, surrender, or any other lien or preferential agreement over any nature on the Collateral, except for . . . deposits, pledges, and lines established or constituted to cover bonds for bids, contracts (except contracts for payment of monies), legal obligations, public services, appeals, indemnities, compliance or payment, or other similar obligations that arise in the ordinary course of the Debtor's business.

Id. at pp. 14-15.   Accordingly, Builders secured consecutive contracts with the same collateral: payments for general contractor services served as "trust funds" for the Agreement of Indemnity, and as security for the lines of credit.   (Adv. Pro. 17-012, Docket No. 92 at p. 3.)

Oriental Bank retained the right to setoff "all deposits (general or special, in installments or on demand, provisional or final) against any obligation by the Debtor."   Id. at p. 18. Builders and Oriental Bank registered the line of credit contract with the Puerto Rico Department of State.   In re Builders Holding Co., 617 B.R. at 420.

### C. The Cabo Rojo Construction Project, Default, and Payment to the Wrong Recipient

On September 30, 2015, the Financing Authority commissioned Builders to complete a construction project in Cabo Rojo, Puerto Rico (the "Cabo Rojo project").   In re Builders Holding Co., 617 B.R. at 420.   MAPFRE issued bonds for this endeavor in accordance with the Agreement of Indemnity.   Id.   The bonds guaranteed the acquisition of labor and materials "up to a limit of $3,070,480." Id.   Builders experienced a liquidity deficit, however, requiring MAPFRE to pay $1,069,849.13 in accordance with its suretyship obligations. (Adv. Pro 17-012, Docket No. 92, Ex. 1 at p. 3.) Because MAPFRE possessed a contractual and "equitable right of

subordination," Builders forfeited "the entire balance on the Project." Id.

In February, 2016, the Financing Authority received notice regarding MAPFRE's right of subordination. In re Builders Holding Co., 617 B.R. at 421. MAPFRE provided a copy of the indemnity agreement, requesting that "all further payments in connection with the [Cabo Rojo] Project, including all progress payments . . . be made payable jointly to [Builders] and MAPFRE." (Adv. Pro 17-012, Docket No. 92, Ex. 7 at p. 1.) Builders also instructed the Financing Authority to remit payment directly to MAPFRE. (Adv. Pro 17-012, Docket No. 74.)

The Financing Authority received the payment instructions, but "by mistake and inadvertence," it "wrongfully made an ACH transfer of $537,924.19" to Builders' account at Oriental Bank on May 23, 2016. (Adv. Pro. 17-012, Docket No. 93 at p. 3.) Oriental Bank immediately setoff $464,757.90 from this amount "to pay off the outstanding line of credit." Id.[3]

A week after the deposit, the Financial Authority requested that Oriental Bank return the $537,924.19 because the "electronic payment was made by mistake." In re Builders Holding Co., 617 B.R. at 422. MAPFRE also mailed a letter to Oriental Bank,

---

[3] It is unclear why the amounts are different from each other.

demanding the "return of its money." Id.  Oriental Bank refused
to return the deposit, however, asserting that the "Puerto Rico
Commercial Transactions Act (the "PRCTA") expressly protects the
right of Oriental to set-off against secured party."  (Adv. Pro.
17-012, Docket No. 92, Ex. 12 at p. 1.)  MAPFRE rejoined, stating
that "Oriental is not legally entitled to retain such funds"
because MAPFRE previously "perfected a first priority lien over
[payments]" for general contracting services.  (Adv. Pro. 10-012,
Docket No. 92, Ex. 14 at p. 2.)

### D. The Bankruptcy Petition and Subsequent Litigation

Builders filed a Chapter 11 bankruptcy petition on August
20, 2016.  (Bankr. Pet. 16-6643 (EAG), Docket No. 1.)  The
bankruptcy court ordered the Financing Authority to "make all
[prospective] payments for work-in-progress [regarding the Cabo
Rojo project] . . . directly to MAPFRE Insurance Company (the
"Surety")."  Id., Docket No. 84 at p. 1.  MAPFRE, Oriental Bank,
the Financing Authority, and Builders continued to dispute the
pre-petition deposit of $537,924.19, however, resulting in an
adversary proceeding.

Builders filed the complaint on January 12, 2017, asserting
five causes of action pursuant to the Bankruptcy Code and Puerto
Rico law.  (Adv. Pro. 07-012, Docket No. 1.)  Counts one and two
allege that the Financing Authority is liable for the mistaken

payment pursuant to 11 U.S.C. sections 542 and 543, respectively. Id. at p. 4-5; see 11 U.S.C. §§ 542 ("Turnover of Property to the Estate") & 543 ("Turnover of Property by a Custodian").  Count three purports that the Financing Authority remains responsible for the progress payment pursuant to the Puerto Rico doctrine in which those "who wrongly pay[], pay[] twice." Id. at p. 5.  Lastly, counts four and five claim that Oriental Bank is liable pursuant to 11 U.S.C. sections 542 and 543, respectively. Id. at pp. 6-8. MAPFRE filed an intervenor's complaint, alleging that "if Builder's prevails in its causes of action against Oriental and/or [the Financing Authority] in the case, all proceeds will be subject to the Surety's first-priority and shall be immediately turned over by Builders to Surety." (Adv. Pro. 17-012, Docket No. 39 at p. 7.)

Builders, MAPFRE and the Financing Authority moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). Id., Docket Nos. 73, 74, 75, 79 & 92.[4]  The appellees prevailed. In re Builders Holding Co., 617 B.R. 414. Accordingly, the bankruptcy court ordered Oriental Bank "to turn over to MAPFRE and the chapter 7 trustee, jointly, the money it setoff from the

---

[4] The bankruptcy court granted Builders' motion for a Chapter 7 conversion on April 27. 2018.(Bankr. Pet. 16-6643, Docket Nos. 396 & 398.)  Subsequently, the Chapter 7 trustee  joined MAPFRE's summary judgment motion after the former agreed to pay for attorneys' fees and $25,000 to unsecured creditors.  Id., Docket Nos. 509 & 513.

debtor's bank account." Id. at 428-29.  Oriental Bank moved for
reconsideration.  In Re Builders Holding Co., Adv. Pro. 17-012,
Bankr. LEXIS 3122 (Bankr. D.P.R. Nov. 5, 2020).  The bankruptcy
court denied this motion, emphasizing that "the error in payment
by the Financing Authority into the debtor's account at Oriental
Bank was the dispositive issue in this case." Id. at *5-6.

## II.  Jurisdiction and Appellate Review

Federal courts are courts of limited jurisdiction.  Destek
Grp. v. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st
Cir. 2003); Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995)
("The jurisdiction of the bankruptcy courts, like that of other
federal courts, is grounded in, and limited by, statute.").
Jurisdiction to adjudicate this action derives from 28 U.S.C. §
158(a).  On appeal, this Court may affirm, modify, or reverse a
bankruptcy court's judgment, or remand with instructions for
further proceedings.  Fed. R. Bankr. P. 8013; see, e.g., HSBC Bank
USA v. Bank of N.Y. Mellon Tr. Co., 646 F.3d 90, 94 (1st Cir. 2011)
("Finding the phrase ambiguous, we remanded to the bankruptcy court
to conduct a 'contextual examination of the parties' intent, taking
full account of the surrounding facts and circumstances'.")
(citation omitted).

The factual findings established by the bankruptcy court
"shall not be set aside unless clearly erroneous, and due regard

shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; <u>see also</u> Fed. R. Civ. P. 52(a)(6). Pursuant to the clearly erroneous standard, reversal is proper only if the appellate court possesses a "definite and firm conviction that a mistake has been committed." <u>In re the Bible Speaks</u>, 869 F.2d 628, 630 (1st Cir. 1989) (citing <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 573 (1985) (finding no clear error where the record supported the bankruptcy court's conclusion and the facts underlying it)). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." <u>Anderson</u>, 470 U.S. at 573.

In contrast, a district court considers the bankruptcy court's conclusions of law <u>de novo</u>. <u>Palmacci v. Umpierrez</u>, 121 F.3d 781, 785 (1st Cir. 1997). It must therefore analyze and solve issues from the same perspective of the bankruptcy court, as if the issues were to be decided for the first time. <u>Segarra-Miranda</u>, 482 B.R. at 67 (citing <u>Water Keeper Alliance v. U.S. Dept. of Defense</u>, 271 F.3d 21, 31 (1st Cir. 2001)).

## III. **Federal Rule of Civil Procedure 56**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute

is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden

of proof on a particular issue, [he or] she [or it] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Tobin, 775 F.3d at 450-51.  A court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations.  McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

## IV.   **The Right of Setoff**

The automatic stay is a temporary reprieve from financial obligations, providing besieged debtors with a "breathing spell" to reorganize and formulate repayment plans.  In re Capitol Food Corp., 490 F.3d 21, 25-26 (1st Cir. 2007); see 11 U.S.C. § 362. The Bankruptcy Code also ensures, however, that creditors receive "fair payments" for delinquent debt.  Copley v. United States, 959 F.3d 118, 125 (4th Cir. 2020) (citation and internal quotation omitted).  A preference is a "transfer of the debtor's assets during a specified pre-bankruptcy period that unjustifiably favors the transferee over other creditors."  Grella v. Salem Five Cnt. Sav. Bank, 42 F.3d 26, 29 n.1 (1st Cir. 1994).

Generally, transfers that occur 90 days prior to the bankruptcy petition are invalid pursuant to 11 U.S.C. section 547. See, e.g., In re Reale, 584 F.3d 27 (1st Cir. 2009) (holding that a $20,000 payment made within 90 days of the bankruptcy petition

consisted a voidable preference).  A setoff (also called "offset")
is a permissible preference, "allowed in only very narrow
circumstances."  Newberry Corp. v. Fireman's Fund Ins. Co., 95
F.3d 1392, 1400 (9th Cir. 1996).

Because Oriental Bank performed a setoff within 90 days of
the bankruptcy petition, the provisions set forth in 11 U.S.C.
section 553 are applicable.  The right of setoff allows "entities
that owe each other money to apply their mutual debts against each
other, thereby avoiding 'the absurdity of making A pay B when B
owes A.'"  Citizen Bank v. Strumpf, 516 U.S. 16, 18 (1995)
(internal citation and quotation omitted).  The Bankruptcy Code
authorizes the application of preexisting rights of setoff rooted
in state and common law.  11 U.S.C. § 553; see also In re Holyoke
Nursing Home, 273 B.R. 305, 311 (Bankr. D. Mass. 2002); see In re
Rivera, 600 B.R. 132, 151 (Bankr. 1st Cir. 2019) (citation omitted)
(holding that section 553 "merely preserves the rights available
under state law").  Section 533 allows banks to seize "monies
deposited against the amount owed to it by the depositor if the
deposit was a general one and the monies were withdrawable at
will."  In re Almacenes Gigante, Inc., 159 B.R. 638, 643 (Bankr.
D.P.R. 1993) (Lamoutte, Bankr. J.).

The right of setoff "should be recognized in bankruptcy unless
the [setoff] is invalid in the first instance under applicable

nonbankruptcy law, or unless it is otherwise proscribed by some express provision of the Code." In re Nat'l Promoters & Servs., Avd. Pro. 13-051, 2020 Bankr. LEXIS 951, (Bankr. D.P.R. Apr. 6, 2020) (Lamoutte, Bankr. J.) (quoting Richard Levin & Henry J. Sommer, 5 Collier on Bankruptcy § 55301[1] (16th ed. 2020)). Equitable considerations do "not permit bankruptcy courts to disregard the plain language of [section 553]." Copley v. United States, 959 F.3d 118, 126 (4th Cir. 2020).

To prevail, Oriental Bank must establish four threshold requirements: that (1) it "holds a 'claim' against the debtor that arose before the commencement of the case," (2) it "owes a 'debt' to the debtor that also arose before the commencement of the case," (3) the "claim and the debt are 'mutual,'" and (4) "the claim and the debt are each valid and enforceable." 5 Collier on Bankruptcy § 553.01; see In re Lahmen Bros., 458 B.R. 134, 140 (Bankr. S.D.N.Y. 2011) (citation omitted). MAPFRE, the Financing Authority, and the trustee do not dispute that the threshold requirements set forth in section 553 are satisfied. They argue, however, that the setoff by Oriental Bank is invalid pursuant to Puerto Rico law.

**A. Setoff Pursuant to the Puerto Rico Commercial Transactions Act**

Security interests in accounts receivable, such as the funds transferred from the Financing Authority to Builders for the Cabo Rojo project, are subject to the Puerto Rico Commercial Transactions Act ("CTA"). See Prestige Capital Corp. v. Pipeliners of Puerto Rico, Inc., Case No. 10-2155, 2011 U.S. Dist. LEXIS 118964 *7, 15-16 (D.P.R. Oct. 14, 2011) (Pérez-Giménez, J.) (applying the CTA in an action concerning an "overlapping security interest as to all of Pipeliners accounts receivables, including receivables from the Puerto Rico Aqueduct and Sewer Authority"); Laws P.R. Ann. tit. 19, § 2219 "[T]his title [of the CTA] applies with respect to the effectiveness of rights of recoupment or set-off against deposit accounts.").[5]

The Puerto Rico legislature based the CTA on Sections 1, 3, 4, 4a and 9 of the Uniform Commercial Code ("UCC"). In re Nat'l Promoters & Servs., 499 B.R. 192, 201 (Bankr. D.P.R. 2013) (noting that Puerto Rico adopted provisions of the UCC "due to the presence

---

[5] The Puerto Rico Civil Code governs the right of setoff pertaining to unsecured interests, known as "compensation." Laws P.R. Ann. tit. 31, §§ 3221-3228. Because Oriental Bank is a secured creditor, the CTA is applicable. See, e.g., In re Rivera, 600 Bank 132, 152-53 (1st Cir. B.A.P. 2019) ("Having concluded its analysis with termination that BPPR's security interest was perfected in accordance with the PR UCC and thus BPPR as a secured creditor was entitled to apply the funds in the 1438 account upon the Debtor's default, the bankruptcy court did not need to consider or apply the the setoff requirements of Puerto Rico Civil Code.").

of large financial institutions from the continental United States doing business on the island"). Pursuant to the CTA, banks "[holding] a security interest in a deposit account perfected by control under § 2265(a)(1) of this title, may apply the balance of the deposit account to the obligation secured by the deposit account." P.R. Laws Ann. tit. 19, § 2367(a)(4).[6] Oriental Bank invoked the CTA before the bankruptcy court and in this action, reiterating that it "had a statutory secured interest over the account that allowed it to set-off or recoup any amount received in Builders Deposit Account." (Case No. 20-1645, Docket No. 7 at p. 24.)

## V.  Discussion

The dispositive inquiry in this action is whether Oriental Bank's right of setoff is consistent with Puerto Rico law. Relevant authoritative precedent is scant. 3 A.L.R. 4th 998 § 1 ("Controversies between a creditor having [a] security in bank account funds, and a bank claiming a right of setoff against those funds, furnish [a] relatively small body of case law.") Indeed, Collier on Bankruptcy states simply, without citation, that "the priority of the creditor's claim may be relevant if some other

---

[6] Oriental Bank perfected its interest in the deposit account by acquiring control of the funds. See Laws P.R. Ann. 19 § 2264 (A security interest in . . . deposit accounts . . . may be perfected by control of the collateral"). Control of collateral is accomplished by a "bank with which the deposit account is maintained." Id. § 2214.

creditor claims a competing interest in the property subject to the creditor's set off right."  5 Collier on Bankruptcy § 553.03.

Generally, "if the bank knows or should know that a secured creditor has perfected a security interest in the account, the bank may not set off those funds." 2 Lender Liability Law and Litigation § 18.09 (2020).   The record is devoid of evidence suggesting, however, that Builders informed Oriental Bank that MAPFRE possessed a security interest in the construction payments.

The Court is unaware of a disposition from the First Circuit Court of Appeals addressing the nuanced questions of law presented by this litigation, namely, whether a bank's right of setoff supersedes a secured creditor's antecedent interest in the same collateral.   Sister jurisdictions adjudicate claims among creditors with no knowledge of each other's security interest pursuant to an "equitable" or "legal" rule.  Id.  The legal rule preserves a bank's right of setoff absent "actual or constructive knowledge of [additional] secured interests."  Id.; see, W. Assur. Co. v. Genesee Valley Tr. Co., 171 F.2d 664, 666 (2d Cir. 1948) ("When the deposit was made in the Agency's personal account, a presumption arose, upon which the [bank] was entitled to rely, that the fund was not a trust fund and that there was no beneficiary entitled to any portion thereof and that presumption continued until annulled by knowledge or adequate notice to the contrary.").

The equitable rule prohibits the seizure of funds "unless [the bank] has detrimentally changed its position in reliance on the debtor's ownership of the funds, regardless of whether it has notice of the creditor's security interest." Chrysler Credit Corp. v. Whitney Nat'l Bank, 798 F. Supp. 1234, 1243 (E.D. La. 1992) (internal citation and quotation omitted); see, e.g., Fulton Nat'l Bank v. Hosier, 295 F. 611 (5th Cir. 1923) (holding that because "Fulton National Bank had no notice of Hosier's rights in the check and had not changed its position by reason of the deposit. Under [the equitable rule], the bank was therefore precluded from retaining the check or its proceeds as against Hosier, and its attempted offset was effectual.") (rev'd on other grounds). Most courts have adopted the legal rule. See 1 Law of Bank Deposits, Collections, & Credit Cards § 3.09 (2020). The Court need not determine which rule is applicable, however, because Puerto Rico law provides an independent basis for invalidating the setoff.

**A.   Restitution**

Article 1795 of the Civil Code provides that "[i]f a thing received where there was no right to claim it and which, through error, has been unduly delivered, there arises an obligation to restore the same." Laws P.R. Ann. tit. 31, § 5121.[7]

---

[7] The CTA provides that the "Civil Code of Puerto Rico with respect to pledges and transmission of credits shall not apply to transactions governed by this chapter." Laws P.R. Ann. tit. 10, § 2219. The setoff of erroneous payments is

To obtain restitution, the Financing Authority must establish the
following three elements:

> (1)  payment is made with the intention of extinguishing
> an obligation; (2) the payment made does not have a just
> cause, that is, there is no legal obligation between the
> payer and the one who collects, or if the obligation
> exists, it is for the lesser amount than the amount paid,
> and (3) the payment was made by mistake and not by mere
> liberality or by any other concept.

In re Redondo Constr. Corp., Bankr. Pet. 02-2887, 2019 Bankr. LEXIS
1162 *117-18 (Bankr. D.P.R. Apr. 8, 2019) (citation omitted).
Article 1800 of the Civil Code further states that the "proof of
payment is incumbent upon the person who claims to have made the
same.  He shall also be obliged to prove the error under which he
made it."  Laws P.R. Ann. tit. 31, § 5126. Restitution is "not a
matter of right, but a matter of sound equitable discretion." Taxco
P.R., Inc. v. Banco de Ponce, 60 F.3d 867, 873 (1st Cir. 1995)

Article 1795 of the Civil Code  encompasses errors of fact
and errors of law, Laws of P.R. Ann. tit. 31, § 5121; E.L.A. v.
Crespo-Torres, 180 D.P.R. 776 (2011).[8]  An error of fact is
"committed when, even knowing the true facts, a merely formal or

---

not, however, addressed by the CTA.  Article 12 of the Civil Code states that
"[i]n matters which are the subject of special laws, any deficiency in such
laws shall be supplied by the provision of this title."  P.R. Laws Ann. tit.
31, § 12.  Accordingly, the restitution doctrine controls the Court's analysis
because the CTA is silent regarding the circumstances in this action.
[8] Oriental Bank submitted a certified English translations of Crespo-Torres,
180 D.P.R. 776, and Sepúlveda v. Departamento de Salud, 145 P.R. 560 (1998).
(Case No. 20-1645, Docket No. 18, Exs. 2 & 3.)

procedural error is committed, . . . traditionally known as a human error." Id. (noting that mathematical errors are errors of fact). In contrast, an error of law "is made by whoever makes a payment under the belief that it is required by law, either because of ignorance of the norm that discharges it from the payment, or by a misunderstanding of the appliable law." Sepúlveda, 145 P.R. 650; see, e.g., Crespo-Torres, 180 D.P.R. 776 (holding that a mayor who "received sums of money related to the salary increase that he was unduly granted" pursuant to an error law owed restitution to the Office of the Comptroller of Puerto Rico).

### 1. Oriental Bank Must Return the Erroneous Payment

The bankruptcy court held that the "Crespo Torres requirements for article 1795 are met." In re Builders, 617 B.R. at 428. The Court agrees. First, the Financing Authority transferred the $537,924.18 "with the intent of extinguishing an obligation," i.e. payment for the Cabo Rojo project. In re Redondo Constr. Corp., 2019 Bankr. LEXIS 1162 *117-18. Second, no legal obligation existed between Oriental Bank and the Financing Authority. See id. Third, the Financing Authority made an error of fact. It "unintentionally" made a "direct deposit to Builders' Account with Oriental" despite receiving unequivocal requests not to do so. (Adv. Pro. 17-012, Docket No. 74 at p. 5.) Because the

Financing Authority entered the wrong account information, the mistake is an error of fact.  Crespo-Torres, 180 D.P.R. 776.

Oriental Bank argues that the Crespo-Torres "requirements are not met in the present case." (Adv. Pro. 20-1645, Docket No. 7 at pp. 30-31.)  The three arguments set forth in support of this proposition are unavailing.  First, Oriental Bank contends that the "payment was not an error but rather a payment in the course of business."  Id. at p. 31.  This statement draws a false dichotomy.  A progress payment and an error of fact may occur simultaneously.  Moreover, Oriental Bank does not specify how transactions conducted "in the course of business" are legally distinct from ad hoc payments, or how this fact should alter the Court's analysis.

Second, Oriental Bank maintains that the "Bankruptcy Court's decision would create an undue burden on the banks in that it would require [them to] verify where deposits are coming from and if they are justified or not."  Id. at p. 32.  The discrete circumstances of this litigation diminish the risk of excessive application.  Courts possess "the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis."  Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 874 (1st Cir. 1995) (noting the need to "inspect the voluminous record with these precepts in mind to ascertain whether

the denial of DACO's motion for restitution is sustainable")
(quoting Rosario-Torres v. Hernández-Colón, 889 F.2d 314, 321 (1st
Cir. 1989)).   The purported burden of confirming the source of
payment is inherent in every restitution cause of action.    A
potential policy concern cannot nullify Article 1795.

Third, Oriental Bank misconstrues the law.  According to
Oriental Bank, it "had no responsibility for any payment made in
'error' by the Financing Authority and any claim should have been
made towards Builders."  (Case No. 20-1645, Docket No. 7 at p.
32.)   Although the progress payment named Builders as the
recipient, Oriental Bank benefited from the transaction by setting
off over half a million dollars.   The error underlying the
restitution cause of action is the inadvertent transfer to
Builders' account at Oriental Bank.   Oriental Bank cites no
authority stating that entities not named as recipients of funds
are exempt from Article 1795.

**VI. Conclusion**

For the reasons set forth above, the Court **AFFIRMS** the
judgment of the bankruptcy court in the underlying adversary

proceeding.   Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, March 4, 2021.

                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE